IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES FIRE INSURANCE
COMPANY,

       Plaintiff, and Counterclaim
       Defendant,

11cv0891
**ELECTRONICALLY FILED**

       v.

KELMAN BOTTLES LLC and KELMAN
GLASS, LLC,

       Defendants, Counterclaim
       Plaintiffs and Third Party
       Plaintiffs,

       v.

CONTINENTAL CASUALTY
COMPANY,

       Third Party Defendant.

**MEMORANDUM OPINION**

**FISHER**, Circuit Judge

    Pending before the court are twelve motions *in limine* filed by the parties in this insurance breach of contract action. The outstanding motions are styled as follows: (1) Third Party Defendant Continental Casualty Company's ("Continental") motion to exclude the expert testimony of Gary S. Barach (ECF No. 178); (2) Continental's motion to preclude Third Party Plaintiff Kelman Bottles ("Kelman") from asserting or suggesting

that Continental violated Pennsylvania insurance law or regulations (ECF No. 214); (3) Continental's motion to preclude testimony from Randolph Goodman on alleged property damage (ECF No. 216); (4) Continental's motion to preclude testimony from Douglas Hilliard or other Kelman witnesses to prove proximate cause of direct physical damage to the furnace interior (ECF No. 218); (5) Continental's motion to limit recovery based upon the "other insurance" provision in its policy (ECF No. 221) (this motion is duplicative of Kelman's motion to preclude Continental from arguing that Kelman's recovery is limited by the other insurance provision (ECF No. 235)); (6) Kelman's motion to preclude expert testimony speculating that a loan to Kelman would have been called (ECF No. 223); (7) Kelman's motion to preclude expert testimony that it expected a leak in the furnace (ECF No. 225); (8) Kelman's motion to exclude the expert testimony of Jeffrey P. Belack as redundant and cumulative (ECF No. 227); (9) Kelman's motion to exclude expert testimony by Nicholas Bozovich (ECF No. 229); (10) Kelman's motion to preclude redundant and cumulative testimony from refractory experts (ECF No. 233); (11) Continental's motion to exclude testimony concerning alleged property damage (ECF No. 237); and (12) Continental's motion to preclude Kelman from introducing evidence of certain alleged damages (ECF No. 239). The motions have been fully briefed and are now ripe for disposition. The Court today decides all but the last two motions, as discussed below.

**Background**

The parties are intimately familiar with the factual background of this case, so the Court need not discuss the facts at length herein. It bears noting, however, that this case

stems from an incident that occurred on March 15, 2011 at Kelman's glass manufacturing facility in Glenshaw, Pennsylvania. At the time, Kelman was operating only one furnace at the facility ("Furnace #2"). Molten glass escaped from Furnace #2 on that day, resulting in physical damage to the furnace and other property. At issue in this case—which is scheduled to go to trial on August 18, 2014—is whether the March 15, 2011 incident was a "breakdown" as defined in Continental's policy.

1. **Continental's motion to preclude expert testimony from Gregory S. Barach**

Continental's first motion seeks to exclude testimony from certified public accountant Gregory S. Barach. The motion is wide-ranging and attacks several aspects of Barach's expert report.[1] At the outset, we note that Barach will be permitted to testify within the scope of his expertise as a certified public accountant—a conclusion that Continental does not appear to challenge. That said, he will not be permitted to testify as to the glass bottle manufacturing industry or insurance underwriting practices. Although the Court will DENY Continental's motion, the scope of that conclusion as it applies to each of Continental's arguments will be addressed below.[2]

a. *Kelman would have sustained operations but for the loss*

Continental argues that Barach should be precluded from testifying that Kelman would have been able to sustain its business operations but for the March 15, 2011

---

[1] Kelman has stipulated in its response that certain aspects of Barach's report (specifically related to property damage) will not form the basis for his testimony, (ECF No. 186 at 3), and the Court will therefore not consider Continental's argument as to those issues.

[2] The Court notes that some aspects of Continental's challenge to Barach's testimony implicates the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Neither party raises *Daubert*, however, nor have they requested a hearing for the purposes of the present motions. Instead, they have presented their arguments as motions *in limine* and the Court will treat them as such.

incident because his testimony is not based upon a valid methodology. *See* Fed. R. Evid. 702 (expert testimony must be based upon "reliable principles and methods"). Contrary to Continental's assertion, however, Barach's expert report describes his review of Kelman's books and records, including those related to accounts receivable, sales and cash flow, payroll liabilities, short-term debt liabilities, and future plans for expansion. Because Barach, as an accountant, relied upon Kelman's financial books and documents in reaching his conclusions, the Court concludes that his methodology was reliable under Rule 702. *See ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473, 480 (E.D. Pa. 2001) (finding an accountant's expert testimony to be reliable where his opinions were based upon a review of a "multitude of relevant business documents"). To the extent that Continental wishes to undermine Barach's conclusions, it is free to do so by way of cross-examination.

      b.    *Business income losses*

Continental likewise challenges the reliability of Barach's conclusion with respect to business income losses. Continental argues that the time period from which production figures were drawn and the basis for the number of expected production days are speculative and unsupported. Kelman responds by pointing to Barach's report, which states the basis for his conclusion insofar as "financial metrics indicate increased production yields during the recent months preceding the incident as well as significant increase in income for operations." (Barach Report at 27).

The Court concludes that Barach will be permitted to testify as to the business income losses on the ground that any dispute Continental has with the factual

4

underpinning of Barach's testimony can be effectively tested on cross-examination. *See Sterling v. Redevelopment Auth. of City of Phila.*, 836 F. Supp. 2d 251, 272 (E.D. Pa. 2011) ("'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination'" (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)). Barach has supported his conclusions with the rationale that Kelman had shown increased production in the months leading up to the incident, and was on track to continue to do so. Continental may challenge that conclusion at trial.

    c.    *Enterprise value*

Continental challenges Barach's calculation of Kelman's enterprise value on the ground that the "mechanical computation" undertaken by Barach in making that calculation was not done in accordance with the standards adopted by his profession. Kelman counters by pointing out that Barach's expert report acknowledges this shortcoming, and notes that Barach's deposition testimony established that a "comprehensive valuation" cannot be conducted when a plant like Kelman's is not operating.

Barach will be permitted to testify based upon the mechanical computation. Kelman maintains that Barach was unable to follow the "comprehensive valuation" methodology given the facts of this case, and Continental offers no basis for finding that assertion to be untrue. Moreover, the Court is not persuaded by Continental's citation to *Elcock v. Kmart Corp.*, 233 F.3d 734, 748 (3d Cir. 2000), for the proposition that

5

Barach's methodology was an improper synthesis of two accepted methodologies. Barach followed the "mechanical computation" methodology, which is an acceptable alternative to the requirements applicable to his profession under certain circumstances. The methodology at issue in *Elcock* involved a hybrid procedure that was, according to the court, a "novel method" that was based upon an "arbitrary admixture of two widely used methods." *Id.* No such circumstance exists here; the mere fact that Barach utilized his professional judgment in conducting the accepted "mechanical computation" does not amount to an "arbitrary admixture" of more than one method of valuation.

        d.        *Rebuttal testimony*

Continental's final objection to Barach's testimony is that it should not be used to rebut the testimony of Continental's experts. Continental did not brief this issue in its memorandum of law in support of the motion *in limine*, presumably because doing so would have exceeded the applicable page limitation. The Court will not consider this challenge to Barach's testimony because Continental should not be permitted to circumvent the Court's rules merely by filing a lengthy motion. *See CTS Corp. v. Mills Gap Rd. Assocs.*, No. 10-156, 2012 WL 6802057, at *5 n.1 (W.D. N.C. Nov. 15, 2012) ("the Court notes that the actual Motion for Summary Judgment . . . is more of a supplemental brief than an actual motion. A motion should be a short and plain statement setting forth the relief requested; it is not an opportunity to circumvent the Court's page limits and offer supplemental argument to the Court"). For the reasons set forth above, the Court will DENY Continental's motion (ECF No. 178).

## 2. Continental's motion to preclude Kelman from asserting that Continental violated Pennsylvania insurance law or regulations

Continental argues that Federal Rule of Evidence 403 precludes Kelman from eliciting testimony or arguing before the jury that Continental violated its obligations under the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. § 1170.1 ("UIPA"), or the Unfair Claims Settlement Practices regulations, 31 Pa. Code § 146.1 ("UCSP"). Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Continental argues that the Court's decision to grant in part its motion for summary judgment (which was affirmed after reconsideration) has rendered Kelman's arguments or testimony moot. Kelman counters by arguing that a violation of the UCSP and UIPA is not *per se* bad faith, and that no such sweeping prohibition for violations of the two exists in the Third Circuit. In support of its argument, Kelman attempts to distinguish the Third Circuit's nonprecedential decision in *Dinner v. United Services Automobile Association Casualty Insurance Co.*, 29 F. App'x 823 (3d Cir. 2002), which held that evidence of an insurer's violation of the UPIA and UCSP was properly excluded under Rule 403 due to risk of prejudice. *Id.* at 828.

The Court rejects Kelman's argument insofar as evidence of Continental's violation of the Pennsylvania insurance laws is not relevant to any of Kelman's remaining viable claims. Moreover, even if the evidence were probative, the risk of jury

confusion is great. Absent relevance and in light of the risk of confusion of issues, Continental's motion (ECF No. 214) will be GRANTED.

### 3. Continental's motion to exclude expert testimony from Randolph Goodman

Continental argues that under Rule 702 Kelman should not be permitted to offer testimony from Randolph Goodman concerning the scope of Kelman's damages and its costs of repair. Goodman's testimony includes and relies upon a report prepared by Henry F. Teichmann, Inc., a company that specializes in the building, repair, and renovation of glass melting furnaces. Goodman (who is a public adjustor) hired Teichmann to determine the loss and damage to Kelman's property by inspecting Furnace #2 and preparing a report describing the "costs for a proposed rebuild" of the furnace. Goodman incorporated Teichmann's report into his own, and performed an adjustment to Teichmann's damages calculation.

As an initial matter, the Court notes that Continental's argument that Goodman was required to possess particular knowledge and skills relative to the design and construction of glass-making furnaces is incorrect. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012) (recognizing that experts routinely rely upon records produced by those with knowledge in a particular field when formulating their opinions). Continental does not challenge the Teichmann's qualifications with respect to the glassmaking industry.

Continental also argues that *ZF Meritor* applies to bar Goodman's testimony in this case. It does not. In *ZF Meritor*, the excluded expert testimony was based upon

underlying business plans about which the expert had no knowledge. *Id.* at 291 (noting that the expert's reliance on the business plans "was improper because he did not know either the qualifications of the individuals who prepared the . . . estimates or the assumptions upon which the estimates were based"). In this case, the Court finds that Goodman's report is reliable because he personally hired Teichmann to prepare the estimates and provided Teichmann with specific instructions as to the information to include in the report. Continental's motion (ECF No. 216) will therefore be DENIED.

### 4. Continental's motion to exclude the testimony of Douglas Hilliard

Continental seeks to exclude testimony by Kelman's Batch and Furnace Manager, Douglas Hilliard, indicating that the Furnace #2 melter was damaged by an uncontrolled cooldown during the March 15, 2011 event. Specifically, Continental argues that such conclusions must be rendered by an expert and that Kelman failed to disclose its intention to present such evidence as required in Federal Rule of Civil Procedure 26(a)(2)(C).[3] In response, Kelman notes that Hilliard has twenty-nine years' experience in the glassmaking industry and that, on the date in question, he personally witnessed and helped stop the flow of molten glass. A week after the event, Hilliard accompanied outside contractors inside the furnace and once inside, he observed cracks in the furnace that he had not seen prior to the event.

Hilliard will be permitted to testify about his observations before and after the event as a lay witness, not as an expert. His statements during his deposition indicate a

---

[3] With respect to expert witnesses who do not provide a written report, Rule 26 requires the offering party to disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and . . . a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

lack of sufficient knowledge or experience to qualify him as an expert under Rule 702, particularly with respect to the makeup and properties of refractory brick and the scientific basis for thermal shock theory. Nevertheless, he will be permitted to testify as to his observations of the furnace along with the testimony outlined in Kelman's pretrial statement, including: the construction, maintenance, use, and operation of the furnace; the design, operation, and maintenance of the furnace as compared to other glass furnaces; the life expectancy of the block in the melter; the date on which that block was last replaced; the events of March 15, 2011; and Kelman's efforts to repair the furnace. Continental's motion (ECF No. 218) will therefore be DENIED IN PART to the extent that Hilliard will be permitted to testify consistent with Kelman's pretrial statement and GRANTED IN PART to the extent that Hilliard will not be permitted to testify as an expert.

> **5. Continental's motion to limit recovery due to the "other insurance" provision in its policy, and Kelman's motion to preclude Continental from asserting the "other insurance" provision**

Continental argues that, assuming Kelman prevails at trial, it can be liable for no more than 50% of the damages awarded by a jury. In support, Continental maintains that Pennsylvania law precludes recovery of the full amount because of the presence of an "other insurance" clause in both its policy and the policy provided by United States Fire Insurance Company. Kelman rejects this argument by noting that the "other insurance" clause does not apply to these two insurers because the policies insure different risks. Kelman has also filed a motion to preclude Continental from asserting the "other insurance" provision. Both motions implicate substantially the same legal analysis.

The Court concludes that these motions are premature insofar as they assume events that have not yet occurred. As such the motions (ECF Nos. 221 & 235) will be DENIED without prejudice to them being reasserted at the appropriate time.

6. **Kelman's motion to preclude expert testimony by Jeffrey Belack and David Duffus on Kelman's ability to continue its operations**

Kelman moves to exclude the expert testimony by Continental witnesses Jeffery Belack and David Duffus, who will testify that Kelman's primary loan to Citizen's Bank in the amount of $10.7 million would have been called and that Kelman was in "financial distress" prior to the incident on March 15, 2011. Kelman argues that these opinions are speculative and unsupported by the record and thus, should be precluded. Continental counters that its experts' opinions are based upon Kelman's financial status and are thus reliable and admissible under Rule 702.

To the extent that Belack and Duffus will testify about Kelman's financial condition during the time period leading up to March 15, 2011 based upon financial records and other documentation that they have reviewed, that testimony will be permitted. Such testimony may include the opinion that Kelman was in financial distress during that time period. The Court notes that Belack and Duffus' backgrounds as certified public accountants qualifies them to testify about Kelman's financial condition, particularly where their testimony is based upon financial records that they have reviewed and incorporated in their expert reports. Such testimony is therefore sufficiently based in fact to meet the standard set forth in Rule 702.

The Court will not, however, permit Belack and Duffus to testify as to whether Citizens Bank would have foreclosed on Kelman's loan. Such a conclusion is speculative, and is in fact contradicted by the actual events that occurred in this case, as Kelman points out in its brief. As discussed above, therefore, Kelman's motion (ECF No. 223) will be GRANTED IN PART as to speculative statements and DENIED IN PART as to testimony based upon the facts in the record.

### 7. Kelman's motion to exclude expert testimony that Kelman expected a leak

Kelman seeks to preclude testimony from Continental's expert David Boothe (and possibly Dr. Dennis McGarry) indicating that Kelman expected the molten glass leak that occurred on March 15, 2011. In support, Kelman argues that the Third Circuit's opinion in this case clarified that whether the leaks were expected was inconsequential to the ultimate issue of whether the breakdown was "'sudden and accidental' and thus was not covered under Continental's 'Equipment Breakdown' policy." *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 181 (3d Cir. 2013). Kelman also maintains that expert opinion is not appropriate to demonstrate a subjective belief on the part of Kelman and its employees. Continental counters that the testimony will assist the jury by showing how the history of other leaks at the Kelman facility demonstrates the likelihood of a catastrophic leak in the future.

Boothe and Dr. McGarry will not be permitted to testify that Kelman (or its employees) expected a leak to occur. Such testimony amounts to little more than their "subjective belief or unsupported speculation," which is not permitted under Rule 702.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (internal quotation marks omitted). An expert witness cannot speak to the subjective belief of Kelman employees about the likelihood of a leak. Boothe and Dr. McGarry will, however, still be permitted to testify based upon their knowledge and experience about the nature of leaks in a glass furnace, how they can spiral out of control, what constitutes a sign of danger, and what can be done to avoid a catastrophic loss when one does occur. Kelman's motion (ECF No. 225) will, therefore, be GRANTED.

**8.     Kelman's motion to preclude cumulative expert testimony from Belack**

Kelman argues that Belack's testimony with respect to Kelman's financial condition prior to the March 15, 2011 event is unnecessarily cumulative of that being presented by Duffus, and thus should be excluded under Rule 403. *See* Fed. R. Evid. 403 (providing that evidence may be excluded if its probative value is outweighed by considerations of the "needless presentation of cumulative evidence"). Kelman also argues that cumulative testimony from two experts will cause the jury to give those opinions more weight because the jury will be "counting heads" instead of giving fair consideration to each side. In response, Continental notes that Kelman has identified two experts to describe its financial losses to the jury (Gary S. Barach and Hayes Walker), and thus the "counting heads" argument is flawed. Continental also notes that the Third Circuit has held that it is an abuse of discretion to limit a party to one expert witness, even where the testimony may be cumulative, when the other party has as many or more witnesses prepared to testify. *Habecker v. Copperloy Corp.*, 893 F.2d 49, 51, 53 (3d Cir. 1990).

Belack will be permitted to testify. Rule 403 precludes testimony only where its probative value is "substantially outweighed" by the danger of "needlessly presenting cumulative evidence." Fed. R. Evid. 403. Such is not the case here, where Continental has shown how each expert addressed Kelman's financial position from a different perspective, and thus they do not overlap. (*See* ECF No. 265 at 4-5). Provided that Belack and Duffus present their testimony from these differing perspectives, the Court will DENY Kelman's motion (ECF No. 227), with the added caveat that if the testimony does become cumulative or causes undue delay, the Court will not hesitate to limit the testimony.

9. **Kelman's motion to exclude expert testimony from Nicholas Bozovich**

Kelman's argument to preclude testimony from Continental's insurance expert, Nicholas Bozovich, is based upon Continental's pretrial statement that Bozovich will testify as to his knowledge of "Pennsylvania jurisprudence interpreting the term 'sudden and accidental,'" among other details about insurance industry custom and practice. Kelman contends that Bozovich should not be permitted to opine upon "what the law required" or to "testify as to the governing law" in the case. Continental responds that Bozovich will testify as to his role in making the coverage decision at issue in this case as part of his role as Continental's Consulting Claim Director for Equipment Breakdown Claims. In making that decision, Continental maintains that Bozovich relied upon his experience and knowledge of Pennsylvania law interpreting "sudden and accidental" in other similar policies.

Bozovich will be permitted to testify. Kelman acknowledges—as it must—that Federal Rule of Evidence 704 permits an expert to provide an opinion that embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. Moreover, courts have permitted "expert testimony as to custom and practice as to the meaning of a particular contract term within an insurance policy, so long as the expert's testimony does not venture into the realm of purely legal contract construction or interpretation." *Nationwide Life Ins. Co. v. Commw. Land Title Ins. Co.*, No. 05-281, 2011 WL 204619, at *13 (E.D. Pa. Jan. 20, 2011) (citing *First Nat'l State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981); *see also Flemming v. Air Sunshine, Inc.*, 311 F.3d 282, 297 n.10 (3d Cir. 2002) ("We agree with the District Court that the expert's opinion as to the custom and usage of the term 'occurrence' in the insurance industry did not constitute an impermissible legal conclusion. We find no abuse of discretion in the court's refusal to exclude this opinion."). To the extent that Bozovich's testimony will aid the jury in understanding the custom and usage of the term "sudden and accidental" in the insurance industry, Kelman's motion (ECF No. 229) will be DENIED.

10. **Kelman's motion to exclude cumulative refractory expert testimony**

Kelman seeks to exclude the testimony of Continental's three refractory block experts, Dr. McGarry, Joel Schubbe, and Boothe, as cumulative and redundant. Specifically, Kelman contends that all three will testify that the leak was caused by wear and tear on the refractory block and will opine as to the damage that resulted in the March 15, 2011 incident. Continental counters that each expert's testimony will be highly probative, and that each expert comes from a different field and is equipped to

15

address different aspects of the refractory block in the furnace, the damage that resulted from the incident, and the scientific and engineering underpinnings of how the incident occurred.

Continental's three witnesses will be permitted to testify. Boothe (an expert in glass manufacturing) authored a report that notes that the furnace could have been restored to its pre-March 15, 2011 condition within six to eight weeks after the incident. Dr. McGarry, a metallurgical engineer, authored a report discussing the condition of the furnace prior to the incident and also addresses the thermal shock theory. Schubbe, a material science engineer, will testify as to the material characteristics and manufacturing of refractory block, the impact of operating conditions on refractory, the signs and characteristics of thermal shock and water damage, and ways to detect and monitor the deterioration of refractory block. Although the testimony from each expert can be generally categorized as being about "refractory block," each brings a unique educational and professional background that informs their analysis. Rule 403 does not preclude some overlap in testimony, provided that the cumulative nature of the testimony does not substantially outweigh its probative value. It appears as though the testimony here will be highly probative as a counter to Kelman's assessment of the damage to Furnace #2. As discussed above, moreover, the Court will not hesitate to stop any of the witnesses should their testimony become cumulative or result in a waste of time. Kelman's motion (ECF No. 233) will, therefore, be DENIED.

**11.    Remaining motions**

Continental raises two final motions related to the calculation of damages that the Court will not resolve at this time. The first is Continental's motion (ECF No. 237) to preclude testimony concerning Kelman's alleged property damage. The second is Continental's motion (ECF No. 239) to preclude Kelman from introducing evidence of alleged damages (1) outside the terms of the policy and (2) that are unsupported by admissible evidence. The remaining outstanding motions will be resolved at a time to be determined by the Court.

**Conclusion**

For the reasons set forth above, the outstanding motions *in limine* will therefore be resolved as follows: Continental's motion to preclude expert testimony from Barach (ECF No. 178) will be DENIED; Continental's motion to preclude Kelman from asserting the UPIA or the UCSP (ECF No. 214) will be GRANTED; Continental's motion to preclude expert testimony from Goodman (ECF No. 216) will be DENIED; Continental's motion to preclude testimony from Hilliard (ECF No. 218) will be GRANTED in part and DENIED in part; Continental's motion to limit recovery due to "other insurance," (ECF No. 221), and Kelman's motion to preclude Continental from asserting that Kelman's recovery is limited by the other insurance provision (ECF No. 235), will both be DENIED without prejudice; Kelman's motion to preclude testimony from Belack and Duffus (ECF No. 223) will be GRANTED in part and DENIED in part; Kelman's motion to preclude testimony that it expected a leak (ECF No. 225) will be GRANTED; Kelman's motion to preclude cumulative testimony by Belack (ECF No. 227) will be DENIED; Kelman's motion to preclude testimony by Bozovich (ECF No.

229) will be DENIED; and Kelman's motion to preclude cumulative refractory expert testimony (ECF No. 233) will be DENIED.  An appropriate order will follow.

DATED:  August 8, 2014

BY THE COURT:<br>
/s/D. Michael Fisher<br>
D. Michael Fisher<br>
U.S. Circuit Judge<br>
Sitting by Designation